# Supreme Court of Texas

No. 23-0365

EIS Development II, LLC,

*Petitioner*,

v.

Buena Vista Area Association, Lance W. Hall and Heather R. Hall, Jason Paul Smithey, David W. Molengraaf and Kimberley K. Molengraaf, Alexander E.W.J. Schindler and Angela R. Schindler, as Individuals,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

JUSTICE LEHRMANN, joined by Justice Huddle and Justice Young, dissenting in part.

This case concerns a deed restriction's application to two adjoining pieces of land: a ninety-acre parcel and a ten-acre parcel (the "Properties" or the "100 acres"). That may come as a surprise after reading the Court's opinion, which sidesteps that issue in favor of a completely different—and irrelevant—inquiry: how the restriction applies to the lots into which EIS has subdivided the 100 acres. While the Court admits that the restriction at issue "limits density of

residential development,"[1] *ante* at 2, it reverses course midstream, effectively eliminating that which it acknowledged because EIS—the restricted party—ignored the restriction and subdivided the Properties in a manner that, for practical purposes, forecloses compliance. The Court acts like the 100 acres—conveyed to EIS's predecessor via deeds to which this restriction was directly attached—no longer exist after the subdivision, *id.* at 2 (faulting this opinion for "harken[ing] back to earlier ninety-acre and ten-acre tracts"), eviscerating the restriction's application to these Properties. That understanding of how plats interact with density restrictions is unsupported and irrational. The Court assumes that the noncompliant plat is set in stone and not subject to modification. But EIS could modify the plat at any time before lots are sold and would presumably do so to make the Properties marketable if the restriction were enforced. For example, EIS could subdivide the 100 acres into forty lots, still allowing one main residence on each in compliance with the restriction.

The land use being challenged here is not, as the Court claims, "building one residence on one sub-five-acre tract," *id.* at 11; rather, it is building seventy-three main residences (one on each of the seventy-three lots) on the 100 restricted acres EIS acquired and still owns. The restriction clearly bars that use. To make sense of the restriction, the Court opines that only one main residence may be built on any *sub*-five-acre tract. However, this language comes from nowhere; the restriction is silent about what can be built on sub-five-acre lots as

_____

[1] Even EIS has said at times in this litigation that the restriction relates to density.

a general matter. It simply allows up to two primary residences on any "five acre tract" within the Properties. Because the Court interprets the restriction in a manner that renders it a nullity, in clear violation of our precedent, I am compelled to respectfully express my dissent.[2]

## I

To start, the Court ignores that, throughout this litigation, the parties and lower courts have focused on how the restriction applies to the 100 acres (the original ninety-acre and ten-acre parcels) as a whole, not to each of the seventy-three subdivided lots. *See, e.g.*, 690 S.W.3d 369, 394 (Tex. App.—El Paso 2023). The Association sought declaratory relief regarding how many homes EIS could build *on these 100 acres*, and its summary judgment motion similarly presented arguments about how many residences could be built "on EIS's 100 acre Property." In granting partial summary judgment for the Association, the trial court determined the extent to which the restriction "limit[s] development *on the Propert*[*ies*]." (Emphasis added.) The trial court's temporary injunction specifically "prohibited [EIS] from building more than 40 main residences on the Propert[ies]." The final judgment, again, concerned how many residences can be built "*on the Propert*[*ies*]." (Emphasis added.) The court of appeals affirmed the judgment on that

---

[2] I agree with the Court's holdings on waiver, changed conditions, and joinder and thus join Parts II, III, and IV of its opinion. I also concur in the portion of the judgment remanding this case for a new trial on the changed-conditions counterclaim. Because I disagree with the Court's interpretation of the restriction, I would remand for a new trial on the Association's claims as well, with a proper jury instruction on EIS's changed-conditions defense.

claim. *Id.* at 396. Even EIS characterized the lower courts' interpretation, which we are reviewing here, as a "global density restriction" on the Properties. The Association, for its part, argues that "on the 100 acres now owned by EIS, only 40 main residences can be built." All those framings turn on how the restriction applies to the 100 acres, not how it applies to each of the seventy-three subdivided lots.

But the Court charts its own path. It begins with the premise that, because the Properties have been subdivided into seventy-three sub-five-acre lots, we must decide how many residences are allowed on each lot. But again, that is the wrong question. The question that all the parties and the lower courts have addressed is whether and how the restriction should be enforced on the Properties, and that question begins not with the seventy-three lots but with the 100 acres. From the start, the restriction was directly attached to the deeds conveying the ten- and ninety-acre parcels; despite this, EIS ignored the restriction and subdivided the 100 acres into seventy-three lots for the purpose of constructing a residence on each lot. Rather than address whether this would violate the restriction, the Court sidesteps the question presented and thereby guts the restriction of any meaning at all. This reasoning—that after property is subdivided the restriction cannot be applied to the original tract, *see ante* at 2—makes a mockery of this density restriction and ignores the intent of the original parties as reflected in the restriction's text. Moreover, if the Court is correct that the starting point is the subdivided plat, all density restrictions that do not contain minimum lot sizes do not, in practice, restrict density at all.

4

Importantly, a plat is not a fundamental shift or a point of no return; it can be vacated or redone, *see* TEX. LOC. GOV'T CODE §§ 212.013(a) (allowing vacatur of a plat "at any time before any lot in the plat is sold"), .014 (authorizing replatting), and requires only "ministerial" approval, *Schroeder v. Escalera Ranch Owners' Ass'n*, 646 S.W.3d 329, 332 (Tex. 2022) (citing TEX. LOC. GOV'T CODE §§ 212.005, .010). But the Court refuses to move past, or even justify, its assumption that the plat permanently altered the Properties and thus the restriction. *Ante* at 15 (characterizing "forcing EIS to re-plat" as "anomalous"). As a result, the Court never attempts to answer the decisive question in this case: how the restriction applies to the 100 acres.

When that question is asked, the answer is clear: this restriction unambiguously prohibits EIS's development of the Properties to include more than forty main residences. Because unambiguous deed restrictions are "valid contracts between individuals," they are "subject to the general rules of contract construction." *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018) (citations omitted). Thus, whether a deed restriction is ambiguous is a question of law, *id.* at 289, as is an unambiguous restriction's meaning, *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). To determine both, we look to the restrictions "as a whole in light of the circumstances present when the parties entered the agreement." *Tarr*, 556 S.W.3d at 280 (citation omitted). "[O]ur primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *Bd. of Regents of Univ.*

5

*of Tex. Sys. v. IDEXX Labs., Inc.*, 691 S.W.3d 438, 442 (Tex. 2024) (quoting *URI*, 543 S.W.3d at 763).

A restriction is unambiguous if it "can be given a definite or certain legal meaning." *Tarr*, 556 S.W.3d at 280 (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). Importantly, however, a restriction is "not rendered ambiguous solely because" its application "to a certain factual situation is 'uncertain.'" *Id.* at 290. And while a deed restriction "may not be enlarged, extended, stretched or changed by construction," *JBrice Holdings, L.L.C. v. Wilcrest Walk Townhomes Ass'n*, 644 S.W.3d 179, 183 (Tex. 2022) (footnote omitted), an interpretation that would functionally nullify the restriction is not reasonable, *see Pilarcik*, 966 S.W.2d at 478–79 (rejecting an interpretation in part because it would, "for all practical purposes, nullify" a provision of the restrictions at issue there). That is because "we ascertain and give effect to the parties' intent expressed in the text, read without rendering any portion meaningless." *IDEXX Labs.*, 691 S.W.3d at 445.

Again, the deed restriction here unquestionably limits density: "[n]o more than two residences may be built on any five acre tract." Basic math tells us that this language means no more than thirty-six (main) residences can be built on the ninety-acre parcel—two per five acres—and no more than four may be built on the ten-acre parcel— again, two per five acres. So, this language created a density restriction allowing a maximum of forty main residences on these 100 acres. The language also tells us that no more than two homes can be built on any five-acre tract. Three homes cannot be built on a five-acre tract within

6

the Properties, and certainly all forty homes cannot be.  The main residences must be spaced out.

The issue then becomes what constitutes a five-acre "tract" on which no more than two main residences may be built.  *See ante* at 13. A "tract" in this context is simply a continuous area of land.[3]  *Tract*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("[a] specified parcel of land"); *Parcel*, *id.* ("[a] tract of land; esp., a continuous tract or plot of land in one possession"); *see also Tract*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2020) ("an area either large or small: as . . . an indefinite stretch of land" or "a defined area of land"); *Tract*, AMERICAN HERITAGE DICTIONARY (2d Coll. ed. 1985) ("[a]n expanse of land").  The Properties, each subject to the deed restriction, can be divided into distinct, non-overlapping "tracts"—which allows for a total of forty main residences on the Properties, with no more than two on any five non-overlapping acres.[4]

---

[3] The Court limits the word "tract" to refer to the seventy-three post-plat lots.  *See ante* at 13 (stating that EIS's plat "created seventy-three separate tracts").  For that reading, it cites only Section 232.001(a) of the Local Government Code, which says a plat "divides [a] tract into two or more parts." TEX. LOC. GOV'T CODE § 232.001(a).  But in this statute, "tract" refers to the property being "divide[d]"—here, the 100 acres, *not* the seventy-three lots.  So, this statute supports the opposite conclusion—that "tract" refers to the 100 acres rather than the seventy-three lots.  The statute says nothing about whether the post-plat parcels, which it refers to as "parts" and "lots," are also "tracts."  *See id.*

[4] If the restriction allowed consideration of overlapping tracts, creative line-drawing could easily render virtually any configuration permissible (or, perhaps, *impermissible*).  The restriction would thus be meaningless. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021) ("[W]e avoid construing contracts in a way that renders contract language meaningless.").

7

The restriction's language does not provide answers to questions beyond this, but it does not need to. *See Tarr*, 556 S.W.3d at 290 (holding that a restriction can be unambiguous even though its application "to a certain factual situation is 'uncertain'"). EIS and the Court emphasize the restriction's silence about subdivision limits, minimum lot size, and how lots should be configured. But no magic words are required to create a density restriction. By relying on what is *not* in the restriction, the Court renders meaningless what *is*.

## II

As the Court cursorily notes, EIS's interpretations are not tenable. First, EIS argues the restriction applies only to individual lots legally designated five acres and thus does not apply here.[5] That interpretation is attractive in its simplicity, but it is ultimately erroneous. Most importantly, it effectively does away with the restriction. If EIS is correct, then a provision apparently included in thousands of deeds conveying thousands of properties serves no purpose at all. Indeed, even if an original conveyance from the State had been of one designated five-acre tract, the grantee could do exactly what EIS seeks to do: unburden itself by subdividing the land into parcels under five acres, thereby eliminating the restriction in its entirety. But, as explained, an interpretation that would nullify the restriction is not

---

[5] This case does not involve any lots designated exactly five acres. The two relevant conveyances burdened by the restriction involve parcels of ninety acres and ten acres, respectively. EIS has subdivided the Properties into seventy-three lots, none of which is five acres; all the lots are smaller than five acres, and all but one are smaller than two acres.

8

reasonable and therefore is not permissible. *See Pilarcik*, 966 S.W.2d at 478–79.

EIS also argues that the restriction must apply only to lots legally designated five acres because *how* it would apply to parcels of other sizes is unclear. *See JBrice Holdings*, 644 S.W.3d at 183 ("[T]o validly limit an owner's property use, a covenant must plainly prohibit that use."). But the language here does just what *JBrice Holdings* requires: it plainly prohibits more than two homes on any five non-overlapping acres. It simply does not explain how that is to be accomplished. And as noted above, it need not do so to unambiguously restrict density. *See Tarr*, 556 S.W.3d at 290. The finer details of the restriction's application are not before us; the issue here is simply whether this density restriction can be enforced. While one could imagine extreme scenarios about how these 100 acres could be divided, those scenarios are not at issue.

EIS raises yet another argument: that the restriction applies only to parcels that have been subdivided into lots *larger than* five acres. It claims the drafters' choice of five-acre tracts is significant because the Local Government Code requires the owner of land located in a municipality or its extraterritorial jurisdiction to obtain a plat in order to divide a parcel into parts of five acres or less. TEX. LOC. GOV'T CODE § 212.004(a). EIS argues that the density restriction's five-acre benchmark alludes to Section 212.004(a) and thus effectively requires "that the properties . . . either [be] platted (if five acres or less) or stay[] in larger parcels." But that the drafters chose the same dividing line (five acres) is not enough to assume they intended to reiterate

9

Section 212.004(a). More importantly, this interpretation would functionally nullify the restriction for the same reason as interpreting it to apply only to parcels legally designated exactly five acres: the owner could avoid the restriction simply by subdividing into parcels of less than five acres, as EIS has done. So, this interpretation, too, is unreasonable.[6]

In a fruitless effort to avoid nullifying the restriction, the Court conjures up a negative implication: the restriction—"no more than two residences may be built on any five acre tract"—means that only one residence may be built on any sub-five-acre tract. *Ante* at 14. To make this unsupported leap, the Court inserts language that comes from nowhere, violating the omitted-case canon of construction on which the Court purports to rely. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012).[7] And contrary to the Court's insistence that its interpretation gives the restriction meaning, the Court's reading renders the restriction as pointless as EIS's interpretations would—a lot owner can now build as many main residences as he wants simply by subdividing. Yes, a landowner could subdivide into 100 lots, 200 lots, or even 500 lots and build a home on every one of them without violating the restriction.

_____

[6] EIS argues in the alternative that the restriction merely limits construction on the Properties to single-family residences. That reading ignores the restriction's express limitation on *how many* residences can be built.

[7] This canon of construction prohibits courts from doing just what the Court does in this case: adding language to the text to fill a judicially perceived gap. SCALIA & GARNER, *supra*, at 93.

The Court incorrectly assumes something is missing from this acknowledged density limit. Specifically, the restriction "does not expressly spell out the proper density for all sizes of" lots and omits a "minimum-[lot]-size restriction." *Ante* at 11, 16. But a deed does not have to specify how its restrictions apply in every situation for those restrictions to be enforced; the issue here is whether a density restriction existed in the first place. The specifics of how it should be applied go to other questions that are not presented. The notion that a density restriction that does not address lot size or configuration magically disappears, allowing landowners to subdivide in a manner that clearly exceeds the maximum number of homes allowed on these 100 acres, defies logic and makes a mockery of the restriction at issue today.

The Court further claims that interpreting the restriction to foreclose EIS's proposed development would produce "complexities" and "anomalous results." *Id.* at 15. But any potential confusion was caused by EIS's subdividing the Properties to include seventy-three homes in *violation* of the restriction, not by the restriction itself.[8] After all, subdividing the Properties in a manner allowing for forty homes with no more than two homes per five-acre tract could have easily been accomplished in a variety of ways. However, subdivision into seventy-three lots was not one of them. Clearly, EIS intended to build seventy-three primary residences on the seventy-three lots, an act that

---

[8] To be clear, I agree with the Court that subdividing the 100 acres does not itself violate the density restriction. *Ante* at 14. But the plat here contemplates and facilitates a violation. We should not allow the burdened party to functionally eviscerate a deed restriction simply by disregarding it.

11

the Court condones today. However, if the restriction were enforced, EIS would need to replat to make all the lots marketable, something it could easily do in a manner that respects the restriction. *See* TEX. LOC. GOV'T CODE §§ 212.013(a) (allowing vacatur of a plat "at any time before any lot in the plat is sold"), .014 (authorizing replatting).

Finally, the Court focuses on the right of individuals to use their property as they see fit and emphasizes that a deed should be clear about what it restricts. Here, everyone agrees that a density restriction existed when EIS purchased the Properties. And it is precisely because I agree with the Court about the particular importance of notice in property law that I believe the Court's interpretation does an unwarranted injustice—not to EIS, but to the adjoining landowners. These property owners relied on recorded restrictions indicating their neighborhood would not become jam-packed with homes. As described above, the Court nullifies those restrictions, allowing as many homes on as many lots as the zoning laws permit.

We treat unambiguous deed restrictions as "valid contracts between individuals." *Tarr*, 556 S.W.3d at 280 (citation omitted). We thus have an obligation to "ascertain and give effect to the parties' intent as expressed in the instrument." *IDEXX Labs.*, 691 S.W.3d at 442 (footnote omitted). No particular mechanism is required to create a density restriction, and we should not invalidate such a restriction just because it does not limit lot size. The Court's decision to do so undercuts our established precedent focusing on drafters' intent as expressed in the text they adopted and risks destabilizing countless restrictions created in reliance on that precedent.

*    *    *

In the end, the Court gives free rein to those seeking to build high-density subdivisions on properties that are subject to deed restrictions not specifically limiting lot size, even if those properties *are* subject to density restrictions. That is problematic, especially in today's world. People seek out properties with density restrictions for various reasons; the trial court found the restriction here "protect[s] the rural lifestyle of the Association's members." In 1950, about 64% of the U.S. population lived in urban areas; now, 83% does.[9] The Association's members relied on the restriction here to opt out of that rapid urbanization to at least some extent. By denying them that right simply because an unambiguous density restriction did not spell out its application to every situation, the Court makes a farce of these types of restrictions that undoubtedly exist throughout our state. I respectfully dissent.

Debra H. Lehrmann
Justice

**OPINION FILED:** June 13, 2025

---

[9] Ctr. for Sustainable Sys., *U.S. Cities Factsheet*, UNIV. OF MICH. (Oct. 2024), https://css.umich.edu/sites/default/files/2024-10/U.S.%20Cities_CSS09-06.pdf.